INHABITANTS OF FREEDOM *vs.* COUNTY COMMISSIONERS OF WALDO COUNTY.

Waldo, 1875.—January 1, 1876.

*Certiorari.*

The three assessors of the town of Freedom, where Flye resided, met at the time and place duly notified, under R. S., c. 6, § 65, to receive the lists of the polls and estates. Flye did not appear at the time and place; but after the assessors had finished their session for the day, two of their number called

at Flye's store and received his list under oath. At a subsequent day the three assessors called upon Flye for a further statement, when he made answers in writing to their questions, but refused to subscribe and make oath thereto. *Held,* that such refusal barred his right to have an adjudication by the commissioners.

ON REPORT.

PETITION for certiorari, dated April 3, 1875, praying that the county commissioners of Waldo county be commanded to certify and return their records of proceedings upon the application of George H. Flye of Freedom, for an abatement of his tax for the year 1874. The assessors met April 1, 1874, at R. Elliot's store in Freedom, after sufficient notice, for the purpose of receiving lists of polls and estates as provided in R. S., c. 6, § 65. Flye did not bring in his list on the first day of April as required by the notification; but in the forenoon of that day, between 11 and 12 o'clock, he started to go to the place of meeting for the purpose of handing in the list, but, seeing two of the assessors going down the street, he did not go. In the afternoon of the same day, he again went out of his store for the same purpose; but saw two of the assessors on the street and again gave up going.

After they had got through what they called their day's work, two of their number called on Flye at his store and received from him the following paper:

"To the assessors of the town of Freedom for the year A. D. 1874.

Messrs: As the law requires I inform you that my taxable property is as follows: One poll.

The above is all the taxable property I have on the first day of April, A. D. 1874. I have no money on hand or at interest over and above what I am paying interest for.

(Signed,)       Geo. H. Flye.

Freedom, April 1, 1874."

This statement he then and there swore to before them, and afterwards answered their questions concerning his real and personal estate. The three assessors met again April 4, and proposed a further examination of Flye, who was called before them and made written answers to their questions, which he however refused to subscribe and swear to.

They thereupon assessed Flye on one poll and $8000, money on hand and at interest; the cash and highway tax on $8000 being $188. They also assessed him as administrator of his deceased wife's estate on $600, stock in trade, the tax on which amounted to $14.10. Flye subsequently presented a written petition to the assessors for an abatement; but they made none, and in December, 1874, he applied to the county commissioners, who after due notice and hearing made a decree as follows:

"It is ordered by the court that there be abated from the tax of said G. H. Flye for the year 1874, the sum of one hundred and eighty-eight dollars, one hundred dollars of which being the amount of his highway personal estate tax, and eighty-eight dollars being the amount of his cash personal estate tax for said year, and that he be reimbursed out of the treasury of the town of Freedom said amount and to be further reimbursed out of said town treasury the amount of $29.92 for incidental charges, being in the whole the sum of $217.92. The above includes no abatement of the tax against said Flye as administrator, we holding that he made no sufficient application to the assessor for such abatement to warrant us in adjudicating upon that tax." ·

The petitioners prayed for writ of certiorari for the reasons, among others.

I. That Flye did not make and bring in to the assessors at the time and place appointed therefor a true and perfect list of his polls and all his estate real and personal not by law exempt from taxation which he was possessed of on the 1st day of April, 1874.

II. That Flye, when requested by the assessors to subscribe and make oath to his answers to their inquiries as to the nature and situation of his property, refused to subscribe and make oath thereto.

*W. H. Fogler*, for the petitioners.

*W. H. McLellan*, for the respondents.

I. Flye did substantially make and bring in to the assessors true and perfect lists. The assessors took the lists and administered the oath after he brought the lists in. They asked him questions. He answered. He did everything required by them. If he had not done all this the county commissioners might have excused him

under R. S., c. 6, § 66, he having tried twice, during the day, to find them in their office. The commissioners are to judge whether the lists are true.

II. He did make proper and complete answers. on the 4th of April, but did not make oath to them. He was not obliged to answer on the 4th of April. If he was obliged to answer on the 4th, why not on the 5th, 6th and so on ? He had done each and everything required by the assessors on the 1st of April the only day fixed by the assessors.

III. The statute seems to contemplate only one examination and that on the day notified.

IV. He made proper application to the assessors, as soon as he could find them all together.

V. The county commissioners had jurisdiction. In *Lambord* v. *County Commissioners*, 53 Maine, 505, the commissioners did not abate, because Lambord refused to be examined under oath at the time he gave in his lists. The court sustained this refusal to abate and dismissed the petition. In this case, the commissioners made a part of the abatement asked for ; they having jurisdiction of the subject matter, found of course that Flye did everything asked of him on the 1st of April. They refused to abate a part because not legally asked for. In *Bangor* v. *County Commissioners*, 30 Maine, 270, the writ was granted because the commissioners had no jurisdiction of the subject matter.

VI. The writ will be refused where no substantial injustice has been done. This application is addressed to the sound discretion of the court. *Boston & Maine* v. *Folsom*, 46 N. H. 64. *West Bath* v. *Co. Com.*, 36 Maine, 74. *Waterville* v. *Co. Com.*, 31 Maine, 506. *Hopkins* v. *Fogler*, 60 Maine, 266. *Lewiston* v. *Co. Com.*, 30 Maine, 19. *Cushing* v. *Gay*, 23 Maine, 9. *No. Berwick* v. *Co. Com.*, 25 Maine, 69. *Mendon* v. *Co. Com.*, 5 Allen, 13. *Gleason* v. *Sloper*, 24 Pick., 181. *Rutland* v. *Co. Com.*, 20 Pick. 71. *Holden* v. *Co. Com.*, 7 Met. 561.

VII. The county commissioners decided that Flye did not have the $8000 to be taxed for.

VIRGIN, J. Before a tax-payer can exercise the statute right of making "application to the county commissioners for any abate-

ment of his taxes," he must not only "make and bring in" to the assessors a "true and perfect list of his poll, and all his estates real and personal, not by law exempt from taxation," but, if required by "the assessors or either of them," "make oath to its truth," and also "answer all proper inquiries in writing, as to the nature and situation of his property, and if required, subscribe and make oath thereto." R. S., c. 6, §§ 66 and 67; *Lambord* v. *Co. Com. Ken. Co.*, 53 Maine, 505.

In the case at bar, it is neither alleged, in the application to the commissioners nor proved, that he performed these conditions precedent; but, on the contrary, it affirmatively appears that he did not perform them all, at least.

One, at least, of the assessors, was present at the time and place designated in their notice during the day; and the petitioner could have filed his list and made oath thereto before him if required. § 67.

But if it be contended that he substantially complied with the provisions of the statute so far as then required by the assessors after their session had closed, still he absolutely and very emphatically refused to "subscribe and make oath to" his written answers made April 4; and this refusal barred any right he might otherwise have had to an adjudication by the commissioners. To be sure this requirement was not made upon him at the time and place designated in the notice of the assessors. Nor was their authority to make it limited to that day. It might become impracticable to make all the examinations in one day; but if made within a reasonable time thereafter, and the inquiries were predicated upon the possession and ownership of property on April 1, it could operate no detriment to the petitioner and would be a reasonable construction of the statute.

This case not being one of mere formal irregularity, in which the court may in its discretion grant or refuse the writ, as substantial justice may dictate, but one of substance, wherein the commissioners acted without authority and their proceedings therefore void, the entry must be                    *Writ granted.*

APPLETON, C. J., DICKERSON, DANFORTH, PETERS and LIBBEY, JJ., concurred.